# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

PROSIGHT SPECIALTY MANAGEMENT
COMPANY, INC., and NEW YORK MARINE
AND GENERAL INSURANCE COMPANY,

                Plaintiffs,

      - against –

V3 INSURANCE PARTNERS LLC,

                Defendant.

-------------------------------------------------------------x

Civil Action No. _____

**COMPLAINT**

Plaintiffs ProSight Specialty Management Company, Inc. ("ProSight") and New York Marine and General Insurance Company ("New York Marine") (collectively "Plaintiffs" or "Company") by way of Complaint against Defendant V3 Insurance Partners LLC ("Defendant" or "V3" or "Program Administrator") state as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action against V3 for damages resulting from V3's breach of its contractual, legal, and fiduciary duties to Plaintiffs. V3 agreed to serve as Plaintiffs' agent, attorney-in-fact, and program administrator in procuring, underwriting, binding, and administering insurance policies for certain towing risks located throughout the United States (the "Program").

2.     V3 neglected and failed to properly administer the Program and supervise the sub-producers that produced insurance business for Plaintiffs. As a consequence, V3 bound substandard risks on behalf of Plaintiffs under conditions that departed from the parties' agreed underwriting guidelines and exposed Plaintiffs to millions of dollars of claims that Plaintiffs should not have incurred. Plaintiffs seek recovery of these and other damages in this action.

## PARTIES

3.      New York Marine is an insurance company incorporated in the State of New York and has its principal place of business at 412 Mt. Kemble Avenue, Suite 300C, Morristown, New Jersey 07960.

4.      ProSight is incorporated in the State of New York and has its principal place of business at 412 Mt. Kemble Avenue, Suite 300C, Morristown, New Jersey 07960.

5.      ProSight and New York Marine have entered into an agreement whereby ProSight acts as the manager and attorney-in-fact for New York Marine.

6.      ProSight manages specialty insurance products underwritten by New York Marine and other affiliated underwriting companies.

7.      Such insurance products include transportation insurance products, such as insurance for trucking, towing, intermodal trucking, taxi cab, and charter bus operations.

8.      ProSight concentrates on niche markets where it has differentiated underwriting and claims expertise, and partners exclusively with specialist distributors who are expected to have a deep understanding of their customers.

9.      Upon information and belief, V3 is a limited liability company formed under the laws of the State of Delaware with its principal place of business at 1113 General Washington Memorial Boulevard, Unit B, Washington Crossing, Pennsylvania 18977.

10.     V3 represents itself and its staff to be skilled in the business of underwriting and administering insurance.

11.     Upon information and belief, the members of V3 are Rodman Fox, Susan Rivera, and James Stanard.

12.     Upon information and belief, Rodman Fox is a citizen of the State of Connecticut and resides in New Canaan, Connecticut.

13.     Upon information and belief, Susan Rivera is a citizen of the State of Pennsylvania and resides in Newtown, Pennsylvania.

14.     Upon information and belief, James Stanard is a citizen of the State of Florida and resides in Sarasota, Florida.

15.     Upon information and belief, V3 provides insurance program administration services in the fields of property, casualty, commercial auto, professional liability and workers' compensation insurance.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of different States than V3 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.     This Court has personal jurisdiction over V3 because it: (a) contracted to perform services for New York companies under the Agreement; (b) consented to the inclusion of a New York governing law provision in the Agreement, (*see* Ex. 1, Agreement, § 18); and (c) irrevocably submitted to the exclusive jurisdiction of this Court or any New York State court sitting in New York City and waived and agreed not to assert any claim that it is not personally subject to the jurisdiction of this Court. (*See id.,* § 20.)

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the relevant events giving rise to these claims occurred in this district.  In addition, V3 has irrevocably waived any objection to venue in this Court and has further waived any claim that this Court is an inconvenient forum.  (*See* Ex. 1, Agreement, § 20.)

- 3 -

## FACTUAL ALLEGATIONS

### The Program Management Agreement

19.     Effective June 16, 2011, Plaintiffs and V3 (the "Parties") entered into the Program Management Agreement (the "Agreement").  A true and correct copy of the Agreement, without annexed exhibits, is attached hereto as Exhibit 1 and is incorporated by reference herein.

20.     As described in the Agreement, Plaintiffs appointed V3 as their legal representative and true and lawful attorney to act in the Company's behalf in procuring, underwriting, binding and servicing policies of insurance.

21.     This appointment, however, applied only with respect to Towing V$_3$antage$^{®}$ business produced by V3 and insured by New York Marine pursuant to underwriting guidelines agreed to by the Parties and annexed to the Agreement at Exhibit A (the, "Underwriting Guidelines").

22.     The Underwriting Guidelines set forth express parameters on the type of insurance business that Plaintiffs authorized V3 to bind and administer on their behalf.

23.     As the agent and attorney-in-fact for Plaintiffs, V3 owed a contractual, legal and fiduciary duty to Plaintiffs to underwrite, bind and administer all insurance under the Program in accordance with the Underwriting Guidelines.

24.     V3 lacked authority to bind any insurance business on behalf of Plaintiffs that failed to conform with the Underwriting Guidelines unless V3 first referred the non-conforming risk to Plaintiffs and obtained Plaintiffs' express approval in writing to bind the non-conforming risk.  (*See, e.g.,* Underwriting Guidelines, Sec. II.C).

25.     In this regard, Section 10.C. of the Agreement states that the "Program Administrator shall not bind the Company to any risk, which is not in accordance with the Underwriting Guidelines previously approved by the Company." (Agreement, Sec. 10.C.)

26.     In the event that V3 binds any risk that does not accord with the Underwriting Guidelines, Section 10.C. of the Agreement further provides that V3 "shall cancel any such policies not in accordance with the Underwriting Guidelines previously approved by the Company at the instruction of the company, and shall indemnify the Company for any losses, damages, or claims arising from such policies." (*Id.*)

27.     Pursuant to the Agreement, V3 received exclusive authority to operate the Program in all states identified in the Underwriting Guidelines, subject to applicable licensing authority of the Company and the approval of its forms and rates, if necessary.

28.     Section 6 of the Agreement identifies general duties required of V3.  Among other duties, V3 agreed to provide all the usual and customary services to sub-producers, policyholders and premium finance companies.

29.     Under Section 6 of the Agreement, V3 also agreed to supervise and direct all work necessary or appropriate to the production of business pursuant to the Agreement, including without limitation, underwriting policies, collecting premium and remitting it to the Company, marshaling statistical data and furnishing it to the Company.

30.     V3 further agreed under Section 6 of the Agreement to establish and maintain such books and records in the manner and as required by the Company in order to record and account for all transactions made pursuant to the Agreement.

31.     Section 6 of the Agreement also specifies that "[a]ll acts of the Program Administrator as an agent, insofar as the Company's business is concerned, are subject to the ultimate authority of the Company."

32.     Under Section 9 of the Agreement, V3 agreed to maintain "true, accurate and complete records and accounts of all transactions arising out of this Agreement."

33.     Section 11 of the Agreement (the "Audit Provision") addresses V3's obligation to submit to audits of its records and files.

34.     The Audit Provision states:

> A.      In order to assure itself of the Program Administrator's compliance with the terms of this Agreement, the Company, upon written notice to the Program Administrator, shall have the right, at its expense, upon three (3) business days [sic] notice to conduct underwriting and financial audits of the records and files of the Program Administrator either with its own employees or independent outside auditors during normal working hours.  Such audits may include but shall not be limited to semi-annual on-site review of policyholder service operations.
>
> B.      The Program Administrator shall upon three (3) business days written notice from the Company permit authorized employees and representatives of the Company, including the Company's reinsurers, to review the operations of the Program Administrator, as they relate to the activities of this Agreement, both at its places of business and in the field, to evaluate the quality and accuracy of the Program Administrator's employees and operations.

35.     Plaintiffs agreed to compensate V3 under the Agreement through the payment of commissions.  Section 16 of the Agreement states in relevant part:

> A.      Subject to compliance by the Program Administrator with this Agreement . . . the Company will allow the Program Administrator, as compensation for all of its services rendered and expenses incurred, a commission of 23.5% of the Gross Collected Premium on the business written under this Agreement (the "Commission").   Gross Collected Premium shall mean all premiums collected by the Program Administrator, less return

- 6 -

premiums, cancellations and premiums collected through the efforts of the Company.

36.     The Agreement carried an initial term of 12 months, with automatic renewal on an annual basis thereafter unless terminated in accordance with the terms of the Agreement.

37.     By letter dated October 15, 2014, a true and correct copy of which is attached hereto at Exhibit 2, Plaintiffs issued written notice to V3 to advise that Plaintiffs terminated the Agreement effective April 15, 2015.

38.     Thereafter, the Agreement terminated on April 15, 2015.

**V3's Duties As Agent for Plaintiffs and V3's Arrangements With Sub-Producers**

39.     As the appointed "legal representative and true and lawful attorney" to Plaintiffs, V3 acted as Plaintiffs' agent in connection with the procuring, underwriting, binding and servicing of policies of insurance under the Program.

40.     As an agent, V3 owed a duty of care to Plaintiffs, separate and apart from any contractual duties it owed.

41.      Further, as an agent acting under power of attorney, V3 owed fiduciary duties to Plaintiffs, including a duty of loyalty, a duty to follow the instructions of Plaintiffs, a duty to act in the best interest of Plaintiffs, and a duty to avoid conflicts of interest.

42.     To assist in procuring, underwriting, binding, and/or servicing insurance policies under the Program for Plaintiffs, V3 worked or contracted with retail insurance agency producers ("Sub-Producers").

43.     Sub-Producers originated and presented all, if not most, prospective and renewal accounts under the Program for underwriting consideration by V3.

44.     V3 retained responsibility for selecting, managing and supervising each of the Sub-Producers that produced insurance business under the Program for Plaintiffs.

45.     In addition, V3 retained responsibility for evaluating whether each risk presented by a Sub-Producer was suitable for underwriting in the Program, conformed with the Underwriting Guidelines, and was administered in accordance with V3's professional duties as agent and attorney-in-fact for Plaintiffs.

46.     While appointed as Program Administrator for Plaintiffs, V3 bound certain insurance business on behalf of Plaintiffs and earned commissions from the binding of such business in accordance with Section 16 of the Agreement.

**Plaintiffs' Audit of V3**

47.     During the time period that it acted as Program Administrator for Plaintiff, V3 bound more than 175 underwriting accounts for Plaintiffs.

48.     After Plaintiffs terminated V3's services as Program Administrator, Plaintiffs sought to audit V3's records and accounts to obtain reasonable assurance of the effectiveness of V3's activities related to underwriting, compliance, financial, and operational matters.

49.     Specifically, by letter dated August 4, 2015, Plaintiffs provided written notice to V3 of Plaintiffs' demand to conduct an audit of V3's records and accounts.

50.     Thereafter, during the week of August 31, 2015, Plaintiffs conducted an initial two and one-half day onsite audit of certain underwriting files maintained by V3.

51.     During this audit, V3 provided Plaintiffs with access to files for the following seven insured accounts:  A-1 Redland Economy Towing of Homestead, Inc.; American Towing; City Wide Towing 7 Auto Repair; Eric Gonzalez d/b/a Gonzalez Tow Service; KenBen Industries, Ltd.; Myers Towing, LLC; and United Towing & Transport, Inc.

52.     This initial onsite audit identified violations of the Underwriting Guidelines and risks that V3 should not have bound consistent with its duties as Program Administrator for Plaintiffs.

53.     In follow up, Plaintiffs requested that V3 permit the further audit of additional files.

54.     In response, V3 provided Plaintiffs with electronic copies of files for the following four insured accounts:  Crown Towing Service, Inc.; Knight's Collision Experts, Inc.; Mac's Towing Service, Inc.; and Mission Wrecker Service S.A.

55.     Plaintiffs' audit of these additional underwriting files identified further violations of the Underwriting Guidelines and risks that V3 should not have bound consistent with its duties as Program Administrator for Plaintiffs.

56.     Accordingly, Plaintiffs sought to conduct an audit of additional risks bound by V3 on behalf of Plaintiffs.

57.     V3, however, resisted providing Plaintiffs with access to additional files.

58.     In fact, as of early January 2016, V3 had declined each of Plaintiffs' reasonable requests to continue the audit, in contravention of the Audit Provision of the Agreement.

59.     In an effort to move the process forward, Plaintiffs sent a formal demand to V3 dated January 14, 2016, in which Plaintiffs demanded that V3 permit the audit of additional files. This letter further advised:

> Based on the information we have received to date we believe there to be violations of the underwriting guidelines that have resulted in the binding of risks that were substandard and unacceptable in our program.  Said risks have resulted in at least $6 million in claims that we would not have been exposed to, had proper underwriting procedures been followed.

- 9 -

60.     In response to this letter, in February 2016, V3 agreed to provide Plaintiffs with electronic copies of underwriting files for ten additional insured accounts.

61.     In particular, V3 provided Plaintiffs with electronic copies of files for the following ten insured accounts:  Autorama Enterprises, Inc.; Blake's Towing & Transport, Inc.; Commercial Wrecker Service, Inc.; J & S Towing, Inc. & Empire State Towing, Inc.; New Image Towing and Recovery, Inc.; Paul Jordan Enterprises, Inc.; RL Leatherwood; Randy's Towing, Inc.; R&J Towing & Recovery, Inc.; and Wyatt's Towing, LLC.

62.     Plaintiffs' audit of these ten additional underwriting files identified further violations of the Underwriting Guidelines and risks that V3 should not have bound consistent with its duties as Program Administrator for Plaintiffs.

63.     In summary, between August 2015 and February 2016, Plaintiffs reviewed and audited twenty-one insured accounts bound by V3 on behalf of Plaintiffs.

64.     Of these twenty-one underwriting accounts, Plaintiffs' audit revealed that risks associated with eighteen different accounts were bound and/or administered by V3 in violation of the Underwriting Guidelines and/or in contravention of V3's duties as agent and Program Administrator for Plaintiffs.

**Summary of Improper Underwriting and Administration Practices by V3**

65.     Plaintiffs' audit revealed a variety of improper underwriting and administration practices by V3, as summarized below.

**A.     V3 Bound Certain Ineligible Risks Without Authorization from Plaintiffs**

66.     Section II of the Underwriting Guidelines defines eligible and ineligible risks for the Program.

67.     The Underwriting Guidelines prohibit V3 from binding any ineligible risks without first referring the risks to Plaintiffs and receiving approval in writing from Plaintiffs to bind the otherwise ineligible risks (the "Referral Requirement").  (Underwriting Guidelines, Sec. II.C).

68.     Where V3 learns of information after the binding of a risk that renders the risk ineligible under the Underwriting Guidelines, V3 likewise owes a professional duty to Plaintiffs —consistent with the Referral Requirement—to timely disclose the new information to Plaintiffs so that Plaintiffs may assess whether to cancel, re-price or otherwise amend the terms and conditions of the risk.

69.     For risks to be eligible for the Program, the Underwriting Guidelines require, *inter alia*, that receipts from the insured's towing operations must equal or exceed 60% of the total gross receipts on package accounts (the "Towing Receipts Requirement").  (*Id.,* Sec. II.A.).

70.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least two insured accounts—Knights Collision Experts, Inc. and RL Leatherwood—that failed to meet the Towing Receipts Requirement and without satisfying the Referral Requirement.

71.     For risks to be eligible for the Program, the Underwriting Guidelines further require, *inter alia*, that the insured's radius of operations is local/intermediate only, defined as 200 miles or less (the "Radius of Operations Requirement").  (*Id.*, Sec. II.A.1).

72.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least five insured accounts—Eric Gonzalez d/b/a Gonzalez Tow Service, New Image Towing and Recovery, Inc., Paul Jordan Enterprises, Inc., R&J Towing & Recovery, Inc. and

Randy's Towing, Inc.—that failed to meet the Radius of Operations Requirement and without satisfying the Referral Requirement.

73.     Additionally, with regard to insured accounts that perform automobile service/repair or body repair/painting, the Underwriting Guidelines limit the eligibility of such accounts to those insureds whose repair receipts total 40% or less of its total receipts.  (the "Automobile Service Receipts Requirement").  (*Id.*, Sec. II.A.6).

74.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least one insured account—Knights Collision Experts, Inc.—that failed to meet the Automobile Service Receipts Requirement and without satisfying the Referral Requirement.

75.     The Underwriting Guidelines, as amended, further require that V3 satisfy the Referral Requirement for any risk with a schedule rating credit modification factor greater than 0.80, for either admitted or non-admitted companies.  (*Id.*, Sec. II.C.5).

76.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least one insured account—KenBen Industries, Ltd.—that involved a schedule rating credit modification factor greater than 0.80 and without satisfying the Referral Requirement.

77.     The Underwriting Guidelines additionally strictly prohibit any backdating, that is, binding any coverage with an effective date prior to the date of binding (the "Backdating Provision"). (*Id.*, Sec. II.E).

78.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least one insured account—RL Leatherwood—that violated the Backdating Provision.

79.     By binding ineligible risks without authorization from Plaintiffs, V3 caused Plaintiffs to insure substandard and unacceptable risks, and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

- 12 -

**B.      V3 Bound Certain Risks That Failed to Meet Underwriting Expectations and File Documentation Requirements**

80.      Section III of the Underwriting Guidelines establishes certain underwriting expectations and file documentation requirements that V3 agreed to follow in connection with the binding of any risk under the Program as agent and Program Administrator for Plaintiffs.

81.      Section III.B. provides that the applicant must have "demonstrated business experience with at least three years in business under the current business name.  If applicant has less than three years business experience, the risk must be loss free, [and] have five (5) years management experience in same industry."   (Underwriting Guidelines, Sec. III.B). (the "Business Experience Requirement").

82.      Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least one insured account—City Wide Towing 7 Auto Repair—that, upon information and belief, failed to satisfy the Business Experience Requirement.

83.      Section III.E. requires V3 to obtain a loss run history before binding any new or renewal risk that consists of currently valued (within the last 90 days) loss experience for the current and two prior years.  (the "Loss History Requirement").  The Loss History Requirement further provides:

> Loss experience on new ventures (less than 3 years in business) should be obtained whenever it's available.  In addition verify experience thru financial statement and business plan.

> Currently valued hard copy loss runs must be maintained in each underwriting file.  If hard copy loss runs are not available from a prior carrier, a Statement of Loss Letter on the insured's letterhead must be in the file.  Underwriting file must be documented as to why the loss runs are not available.

(*Id.*, Sec. III.E).

- 13 -

84.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least five insured accounts—American Towing, City Wide Towing 7 Auto Repair, R&J Towing & Recovery, Inc., J & S Towing, Inc. & Empire State Towing, Inc., and Mission Wrecker Service S.A.—without satisfying the Loss History Requirement.

85.     Section III.F. addresses the application of schedule rating credits and debits to the premium for any particular risk under the Program.  The Underwriting Guidelines prohibit the use of schedule rating credits/debits unless a particular risk is eligible for the application of such credits/debits and the credits/debits are limited to "pricing individual risk characteristics not otherwise accounted for by the loss costs."  (*Id.*, Sec. III.F.)

86.     Moreover, wherever V3 applies schedule rating credits/debits, the Underwriting Guidelines require the completion of the appropriate worksheet in its entirety.  (the "Premium Modification Documentation Requirement").  (*Id.*)

87.     Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least three insured accounts—KenBen Industries, Ltd., New Image Towing and Recovery, Inc., and Paul Jordan Enterprises, Inc.—without satisfying the Premium Modification Documentation Requirement.

88.     In addition, due to negligent acts, errors and/or omissions by V3, it bound insurance for at least one insured account—KenBen Industries, Ltd.—at a lower premium than Plaintiffs had authorized and without seeking additional referral or approval from Plaintiffs to do so.

89.     By binding risks that failed to meet underwriting expectations and file documentation requirements, V3 caused Plaintiffs to insure substandard and unacceptable risks,

and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**C.      V3 Bound Certain Risks That Failed To Comply With Driver and Vehicle Eligibility Requirements**

90.      Section VII.E of the Underwriting Guidelines establishes, *inter alia*, driver and vehicle eligibility requirements for the Program.

91.      Section VII.E.5 sets forth specific limits on, *inter alia*, the number of eligible drivers that may have moving violations, and the number of moving violations permitted per eligible driver.   In addition, Section VII.E.5 establishes minimum age and driving experience requirements for each driver insured under the Program.   Such requirements shall be referred to collectively hereafter as "Driver Eligibility Requirements."   (Underwriting Guidelines, Sec. VII.E.5).

92.      Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least three insured accounts—Blake's Towing & Transport, Inc., Mac's Towing Service, Inc., and Randy's Towing, Inc.—that failed to satisfy the Driver Eligibility Requirements.

93.      Section VII.E.8 sets forth limitations on the type of vehicles eligible for insurance under the Program.  (the, "Vehicle Eligibility Requirements").  (*Id.*, Sec. VII.E.8).

94.      Due to negligent acts, errors and/or omissions by V3, however, it bound insurance for at least one insured accounts—New Image Towing and Recovery, Inc.—that failed to satisfy the Vehicle Eligibility Requirements.

95.      By binding risks that failed to comply with driver and vehicle eligibility requirements, V3 caused Plaintiffs to insure substandard and unacceptable risks, and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**D.     V3 Failed To Obtain or Timely Obtain Completed Loss Control Surveys for Certain Risks**

96.     Section VIII of the Underwriting Guidelines requires V3 to obtain completed Loss Control surveys for all accounts that qualify within thirty days of policy inception.

97.     A Loss Control survey usually involves an inspection conducted by a third-party of the insured's premises and operations.  A completed Loss Control survey provides a means to verify the accuracy of representations made by an insured in the policy application and to identify matters not disclosed in the policy application.

98.     The Underwriting Guidelines require the completion of Loss Control surveys within thirty days of policy inception in order to provide Plaintiffs with the opportunity to cancel a policy, modify a policy premium, or modify other policy terms and conditions, based on the actual facts presented by an insured exposure, before the date by which such policy cancellation or modification by the insurer may not occur.

99.     Due to negligent acts, errors and/or omissions by V3, however, it failed to obtain or timely obtain completed Loss Control surveys for at least eight insured accounts—Autorama Enterprises, J & S Towing, Inc. & Empire State Towing, Inc., Mac's Towing Service, Inc., Myers Towing, LLC, Paul Jordan Enterprises, Inc., R&J Towing & Recovery, Inc., RL Leatherwood, and Wyatt's Towing, LLC—in contravention of the Loss Control requirements of the Agreement and V3's duties as agent and Program Administrator for Plaintiffs.

100.     By failing to obtain or timely obtain completed Loss Control surveys, V3 detrimentally impacted Plaintiffs' ability to cancel or modify the terms and conditions of certain risks in accordance with the actual facts presented by the insured exposure, and therefore caused Plaintiffs to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

- 16 -

**E.      V3 Failed To Refer Completed Loss Control Surveys to Plaintiffs for Certain Risks**

101.     Even in certain instances where V3 obtained completed Loss Control surveys, V3 did not take appropriate action in response to the Loss Control survey in violation of V3's duties to Plaintiffs as Program Administrator.

102.     Due to negligent acts, errors and/or omissions by V3, it failed to refer completed Loss Control surveys to Plaintiffs or to otherwise highlight discrepancies identified in Loss Control surveys to Plaintiffs on at least three insured accounts—New Image Towing and Recovery, Inc., United Towing & Transport, Inc., and Wyatt's Towing, LLC—in contravention of V3's duties as agent and Program Administrator for Plaintiffs.

103.     By failing to properly refer such completed Loss Control surveys to Plaintiffs, V3 detrimentally impacted Plaintiffs' ability to cancel or modify the terms and conditions of certain risks in accordance with the actual facts presented by the insured exposure, and therefore caused Plaintiffs to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**F.      V3 Failed to Monitor Compliance with Pre-Binding Conditions on Certain Risks**

104.     As Program Administrator for Plaintiffs, V3 undertook a professional obligation to monitor whether each insured under the Program complied with any pre-binding conditions imposed by Plaintiffs and to refer instances of non-compliance to Plaintiffs.

105.     Due to negligent acts, errors and/or omissions by V3, it failed to monitor compliance and/or report instances of non-compliance with pre-binding conditions imposed by Plaintiffs for at least three insured accounts—Blake's Towing & Transport, Inc., KenBen Industries, Ltd., and Myers Towing, LLC.

- 17 -

106.    Such failure by V3 detrimentally impacted Plaintiffs' ability to cancel or modify the terms and conditions of certain risks in accordance with the actual facts presented by the insured exposure, and therefore caused Plaintiffs to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**G.    V3 Failed to Identify Fraud on the Part of Certain of its Sub-Producers**

107.    As Program Administrator to Plaintiffs, V3 owed Plaintiffs a professional duty to identify fraud on the part of its Sub-Producers.

108.    On information and belief, V3 discovered that at least two Sub-Producers either forged signatures or fabricated loss runs while acting as Sub-Producers for Plaintiffs.

109.    These Sub-Producers originated and presented at least seven accounts insured by Plaintiffs under the Program, including American Towing, Blake's Towing & Transport, Inc., City Wide Towing 7 Auto Repair, J & S Towing, Inc. & Empire State Towing, Inc., Mission Wrecker Service S.A., Myers Towing, LLC, and R&J Towing & Recovery, Inc.

110.    Upon information and belief, one or more of the above insured accounts also involves fraud, including fabricated loss runs, forged signatures and/or other falsified information.

111.    Due to negligent acts, errors or omissions by V3, it failed to timely identify fraud on the part of its Sub-Producers.

112.    As such, V3 caused Plaintiffs to insure substandard and unacceptable risks, and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**H.    V3 Negligently Misrepresented or Failed to Disclose Information to Plaintiffs**

113.    As an agent, attorney-in-fact and Program Administrator for Plaintiffs, V3 owed Plaintiffs a special duty to render accurate and complete information to Plaintiffs in connection with the procuring, underwriting, binding, and servicing of insurance policies for Plaintiffs.

114.    Upon information and belief, V3 reported inaccurate or incomplete information to Plaintiffs regarding certain risks that V3 bound on behalf of Plaintiffs, and/or failed to advise Plaintiffs of prior representations made by prospective insureds that V3 knew or should have known were false.

115.    In binding policy no. PK2014TOW00265 issued to Wyatt's Towing, LLC in 2014, V3 referred the risk to Plaintiffs' representative, Vince Coca, and received approval from Plaintiffs to bind the risk based in part on the representation that the long haul operations of Wyatt's Towing amounted to 1% of its total operations.  Subsequently, a completed Loss Control survey demonstrated that the long haul operations of Wyatt's Towing amounted to 10% of its total operations.   V3, however, negligently failed to advise Plaintiffs of this prior misrepresentation made by Wyatt's Towing in breach of V3's professional and fiduciary duties to Plaintiffs.

116.    In binding policy nos. PK2012TOW00007 and PK2013TOW00007 issued to New Image Towing and Recovery, Inc. in 2012 and 2013, respectively, V3 received an application from New Image Towing stating that 5% or less operations of its operations exceeded a 200 miles radius.  In breach of the Referral Requirement, however, V3 negligently failed to refer the ineligible risks to Plaintiffs for approval prior to binding either policy.  Moreover, a Loss Control survey generated in 2012 showed that 30% of the insured's operations exceeded a 200 mile radius.  V3, however, negligently failed to advise Plaintiffs of this prior misrepresentation made

by New Image Towing and Recovery in breach of V3's professional and fiduciary duties to Plaintiffs.

117.    In binding policy no. PK2012TOW00012 issued to Knights Collision Experts, Inc. in 2012, V3 referred the risk to Plaintiffs' representative, Vince Coca, and received approval from Plaintiffs to bind the risk based on the size of the proposed premium.  At the time V3 sought the referral, V3 knew or should have known that the risk was ineligible under the Underwriting Guidelines, (*see* Section II.A), because the (a) towing receipts of Knights Collision Experts totaled less than 50% of its gross receipts, and (b) the service repair/body paint receipts of Knights Collision Experts amounted to more than 40% of its total receipts.  In seeking Plaintiffs' approval of the risk, however, V3 negligently failed to advise Plaintiffs that the account did not meet the Towing Receipts Requirement or the Automobile Services Receipt Requirement, in breach of V3's professional and fiduciary duties to Plaintiffs.

118.    In binding policy no. PK2012TOW00081 issued to United Towing & Transport, Inc. in 2012, V3 received an application from United Towing stating that it performed approximately 3,000 tows per month.  Because of the insured's loss history, V3 referred the risk to Plaintiffs' representative, Vince Coca, and received approval from Plaintiffs in August 2012 to bind the risk.  Subsequently, a Loss Control survey demonstrated that United Towing actually averaged approximately 10,000 tows per month.  V3, however, negligently failed to advise Plaintiffs of this prior misrepresentation made by United Towing in breach of V3's professional and fiduciary duties to Plaintiffs.

119.    In binding policy no. PK2013TOW00226 issued to American Towing in 2013, after initial binding, V3 referred the risk to Plaintiffs' representative, Vince Coca, and received approval from Plaintiffs to bind the risk notwithstanding the insured's employment of a younger

driver and request for substantial insurance policy limits. In making this referral, V3 knew or should have known that the proposed insured possessed only two years of loss history and had experienced poor loss results, which also required a referral to Plaintiffs for approval before binding. V3, however, negligently failed to disclose these facts to Plaintiffs, in breach of V3's professional and fiduciary duties to Plaintiffs.

120. Due to the foregoing negligent misrepresentations and/or omissions, V3 caused Plaintiffs to insure substandard and unacceptable risks, and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

I. **V3 Failed to Properly Supervise Its Sub-Producers**

121. As Program Administrator to Plaintiffs, V3 owed Plaintiffs a professional duty to supervise each of V3's Sub-Producers, and to ensure that its Sub-Producers referred suitable risks for underwriting in the Program.

122. Due to negligent acts, errors and/or omissions by V3, it failed to properly supervise its Sub-Producers and ensure that its Sub-Producers referred suitable risks for underwriting in the Program.

123. As such, V3 caused Plaintiffs to insure substandard and unacceptable risks, including but not limited to risks associated with the insured accounts identified in the table at paragraph 126 below, and to incur liability for claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

**V3's Breaches of Its Professional Duties Caused Damages to Plaintiffs**

124. The above-referenced breaches of V3's contractual, legal and fiduciary duties caused damages to Plaintiffs.

125.    In particular, V3's improper underwriting and administration of risks on behalf of

Plaintiffs caused Plaintiffs to insure substandard and unacceptable risks and to incur liability for

claims losses and expenses associated with such risks that Plaintiffs should not have incurred.

126.    The below table summarizes the improperly bound and/or administered risks

identified in Plaintiffs' audit of V3:

| Insured Name | Policy Number | Gross Premium | Total Incurred[1] | Total Paid[2] | Improper Practice[3] |
|---|---|---|---|---|---|
| American Towing | PK2013TOW00226 | $98,631 | $615,442 | $615,442 | B, G, H |
| Autorama Enterprises, Inc., Autorama Enterprises of Bronx, I | PK2014TOW00044 | $217,686 | $251,941 | $60,337 | D |
| Blake's Towing & Transport, Inc. | PK2012TOW00122 | $41,676 | $300,972 | $285,772 | C, F, G |
| City Wide Towing 7 Auto Repair | PK2012TOW00106 | $140,292 | $1,684,777 | $1,656,705 | B, G |
| Eric Gonzalez d/b/a Gonzalez Tow Service | PK2012TOW00091 | $16,155 | $752,070 | $526,439 | A |
| J & S Towing, Inc. & Empire State Towing, Inc. | PK2013TOW00195 | $52,106 | $818,281 | $33,281 | B, D, G |
| KenBen Industries, Ltd. | PK2012TOW00066 | $179,795 | $596,444 | $570,622 | A, B, F |
| Knights Collision Experts, Inc. | PK2012TOW00012 | $265,492 | $515,031 | $489,791 | A, H |
| Mac's Towing Service, Inc. | PK2012TOW00131 | $90,424 | $228,156 | $228,156 | C, D |

---

[1] "Total Incurred" refers to the value of total "incurred" losses and expenses as of March 9, 2016, inclusive of amounts paid by New York Marine and amounts reserved by New York Marine.

[2] "Total Paid" refers to the value of total losses and expenses paid by New York Marine as of March 9, 2016.

[3] This column shall refer to the categories, by letter, identified at paragraphs 66 through 120 above.

| Insured Name | Policy Number | Gross Premium | Total Incurred[1] | Total Paid[2] | Improper Practice[3] |
|---|---|---|---|---|---|
| Mission Wrecker Service S.A. | PK2012TOW00046 | $117,361 | $116,693 | $116,693 | B, G |
| Myers Towing, LLC | PK2012TOW00143 | $97,581 | $837,448 | $216,679 | D, F, G |
| New Image Towing and Recovery, Inc. | PK2012TOW00007 | $97,006 | $48,164 | $48,164 | A, B, C, E, H |
|  | PK2013TOW00007 | $108,742 | $93,763 | $93,763 |  |
| Paul Jordan Enterprises, Inc. | PK2012TOW00058 | $19,710 | $326,270 | $14,174 | A, B, D |
| Randy's Towing, Inc. | PK2012TOW00036 | $34,142 | $198,134 | $185,133 | A, C |
| R&J Towing & Recovery, Inc. | PK2012TOW00088 | $55,947 | $542,889 | $75,565 | A, B, D, G |
| RL Leatherwood d/b/a Hartford Towing / Sonny Leatherwood d/b/a Hartford Auto | PK2012TOW00161 | $34,947 | $384,510 | $157,818 | A, D |
| United Towing & Transport, Inc. | PK2012TOW00081 | $118,242 | $815,578 | $299,625 | E, H |
| Wyatt's Towing, LLC | PK2014TOW00265 | $71,640 | $564,785 | $484,705 | D, E, H |
| **Totals** |  | $1,857,575 | $9,691,348 | $6,158,864 |  |

127.    To date, Plaintiffs have only audited twenty-one insured accounts bound by V3 on Plaintiffs' behalf.

128.    Upon information and belief, an examination of all or some of the other approximately 155 insured accounts bound by V3 on behalf of Plaintiffs would reveal additional and similar breaches of V3's professional duties to Plaintiffs and additional damages caused to Plaintiffs by such breaches.

## CLAIMS FOR RELIEF

### COUNT I
**(Breach of Contract)**

129.    Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

130.    The Agreement is a valid and enforceable contract between Plaintiffs and V3.

131.    At all relevant times, Plaintiffs fully performed their obligations under the Agreement.

132.    V3, however, failed to properly procure, underwrite, bind and administer certain insurance policies for Plaintiffs in accordance with the terms of the Agreement.

133.    Plaintiffs' prior audit of V3's files revealed numerous instances, as summarized above, in which V3 bound and/or administered risks in violation of the Underwriting Guidelines, which form a part of the Agreement at Exhibit A.

134.    Thus, V3 breached the terms of the Agreement.

135.    The risks audited by Plaintiffs, however, represent only a small percentage of the total risks bound by V3 on behalf of Plaintiffs.

136.    Upon information and belief, a review and audit of some or all of the other approximately 155  risks bound by V3 on behalf of Plaintiffs will reveal additional breaches of the Underwriting Guidelines.

137.    V3 also breached the Agreement by failing to maintain "true, accurate and complete records and accounts of all transactions arising out of" the Agreement.

138.    Due to V3's breaches, Plaintiffs have been damaged in an amount in excess of $75,000, and Plaintiffs are entitled to recover damages representing the full value of all losses and expenses incurred by Plaintiffs, net of premium, on all risks that V3 bound and/or

administered in violation of the Underwriting Guidelines, plus all other damages foreseeably resulting from such breaches.

## COUNT II
### (Indemnification)

139.     Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

140.     Under Section 10.C. of the Agreement, V3 agreed to indemnify Plaintiffs for any losses, damages, or claims arising from policies bound by V3 that do not accord with the Underwriting Guidelines.

141.     Plaintiffs' prior audit of V3's files revealed numerous instances, as summarized above, in which V3 bound risks in violation of the Underwriting Guidelines.

142.     The risks audited by Plaintiffs, however, represent only a small percentage of the total risks bound by V3 on behalf of Plaintiffs.

143.     Upon information and belief, a review and audit of some or all of the other approximately 155 risks bound by V3 on behalf of Plaintiffs will reveal additional breaches of the Underwriting Guidelines.

144.     Plaintiffs have not cancelled any policies underwritten by V3 in contravention of the Underwriting Guidelines or instructed V3 to cancel such policies.

145.     Rather, Plaintiffs have paid and incurred all losses and expenses covered by such policies bound by V3 in violation of the Underwriting Guidelines.

146.     Pursuant to Section 10.C. of the Agreement, V3 must indemnify Plaintiffs for all losses, damages, and claims paid and incurred by Plaintiffs arising from all risks that V3 bound in contravention of the Underwriting Guidelines.

## COUNT III
### (Negligence)

147.    Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

148.    As the designated agent and administrator of the Program for Plaintiffs, V3 owed Plaintiffs a duty to exercise reasonable skill and care in procuring, underwriting, binding, and administering insurance policies for Plaintiffs.

149.    V3, through its employees, agents and/or Sub-producers, breached their duty of care to Plaintiffs.

150.    Plaintiffs' prior audit of V3's files revealed numerous instances, as summarized herein, in which V3 breached its professional duties to Plaintiffs in connection with procuring, underwriting, binding, and/or administering insurance policies for Plaintiffs.

151.    Upon information and belief, a review and audit of some or all of the other approximately 155  risks bound by V3 on behalf of Plaintiffs will reveal additional breaches by V3 of its professional duties to Plaintiffs.

152.    V3's breaches of its duty of care directly and proximately caused damages to Plaintiffs and exposed Plaintiffs to substandard and unacceptable risks that Plaintiffs would not have been exposed to but for V3's breaches.

153.    Due to V3's breaches, Plaintiffs have been damaged in an amount in excess of $75,000, and Plaintiffs are entitled to recover damages representing the full value of all losses and expenses incurred by Plaintiffs, net of premium, on all risks that V3 bound in breach of its professional duties to Plaintiffs, plus all other damages resulting from such breaches.

## COUNT IV
### (Negligent Supervision)

154.    Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

155.    To perform its services as the designated agent and administrator of the Program for Plaintiffs, V3 utilized the services of Sub-Producers.

156.    V3's Sub-Producers identified accounts for possible underwriting by Plaintiffs in the Program and presented those accounts to V3.

157.    V3, as an agent, attorney-in-fact and Program Administrator for Plaintiffs, owed Plaintiffs a duty of care to reasonably review all accounts presented by its Sub-Producers to ascertain their suitability for insurance under the Program and to reasonably supervise the services performed by its Sub-Producers on behalf of Plaintiffs.

158.    V3, however, breached its duty to reasonably review all accounts presented by its Sub-Producers and to reasonably supervise the services performed by its Sub-Producers on behalf of Plaintiffs.

159.    Such breaches include, but are not limited to: (a) failing to obtain necessary and pertinent information from its Sub-Producers for the underwriting of risks in the Program; (b) failing to take reasonable steps to ensure that its Sub-Producers produced business in conformity with the Underwriting Guidelines; (c) failing to take reasonable steps to ensure that its Sub-Producers adequately investigated known historical risks of proposed insureds under the Program; (d) failing to detect or act upon false or inaccurate information submitted by its Sub-Producers, including fraudulent loss runs; and (e) continuing to do business with Sub-Producers whose judgment could not be reasonably relied upon and that V3 either knew, or should have known, could not be reasonably relied upon.

160.   V3's breaches of its duty of care directly and proximately caused damages to Plaintiffs and exposed Plaintiffs to substandard and unacceptable risks that Plaintiffs would not have been exposed to but for V3's breaches.

161.   Due to V3's breaches, Plaintiffs have been damaged in an amount in excess of $75,000, and Plaintiffs are entitled to recover damages representing the full value of all losses and expenses incurred by Plaintiffs, net of premium, on all risks that V3 bound in breach of its duties to Plaintiffs, plus all other damages resulting from such breaches.

## COUNT V
### (Negligent Misrepresentation)

162.   Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

163.   V3, as an agent, attorney-in-fact and Program Administrator for Plaintiffs, stood in a fiduciary relationship towards Plaintiffs, and owed Plaintiffs a special duty to render accurate and complete information to Plaintiffs in connection with the procuring, underwriting, binding, and servicing of insurance policies for Plaintiffs.

164.   Upon information and belief, V3 negligently reported inaccurate or incomplete information to Plaintiffs regarding certain risks that V3 bound on behalf of Plaintiffs, and/or negligently failed to advise Plaintiffs of prior representations made by prospective insureds that V3 knew or should have known were false.

165.   As more fully alleged above, such negligent misrepresentations or omissions by V3 concerned, among other matters, (a) the geographic radius of certain insured's operations; (b) the percentage-amount of revenues generated by certain insured's towing operations; (c) the scope of certain insured's operations; and (d) the loss history of certain insureds.

166.    V3 made such negligent misrepresentations or omissions with knowledge that Plaintiffs were relying on their representations.

167.    Additionally, V3 knew or should have known that it made negligent misrepresentations or omissions to Plaintiffs had it (a) properly investigated information reported by its Sub-Producers, (b) ordered Loss Control surveys on all accounts requiring such Loss Control surveys, and/or (c) reviewed the results of all Loss Control surveys and timely referred discrepancies to Plaintiffs.

168.    Plaintiffs reasonably relied on the information provided by Plaintiffs to their detriment in making decisions to bind insurance for those subject accounts.

169.    V3's breaches of its duty of care directly and proximately caused damages to Plaintiffs and exposed Plaintiffs to substandard and unacceptable risks that Plaintiffs would not have been exposed to but for V3's breaches.

170.    Due to V3's breaches, Plaintiffs have been damaged in an amount in excess of $75,000, and Plaintiffs are entitled to recover damages representing the full value of all losses and expenses incurred by Plaintiffs, net of premium, on all risks that V3 bound in breach of its duties to Plaintiffs, plus all other damages resulting from such breaches.

## COUNT VI
### (Breach of Fiduciary Duty)

171.    Plaintiffs reallege and incorporate the foregoing allegations as though fully set forth herein.

172.    V3, as an agent, attorney-in-fact and Program Administrator for Plaintiffs, stood in a fiduciary relationship towards Plaintiffs.  As such, V3 owed fiduciary duties to Plaintiffs, including a duty of loyalty, a duty to follow the instructions of the principals, a duty to act in the best interest of the principals, and a duty to avoid conflicts of interest.

173.    As alleged above, V3 breached its fiduciary duties to Plaintiffs in connection with procuring, underwriting, binding, and administering certain insurance policies on Plaintiffs' behalf.

174.    V3's breaches of its fiduciary duties caused damages to Plaintiffs and exposed Plaintiffs to substandard and unacceptable risks that Plaintiffs would not have been exposed to but for V3's breaches.

175.    Due to V3's breaches of its fiduciary duties, Plaintiffs have been damaged in an amount in excess of $75,000, and Plaintiffs are entitled to recover damages representing the full value of all losses and expenses incurred by Plaintiffs, net of premium, on all risks that V3 bound in breach of its duties to Plaintiffs, plus all other damages resulting from such breaches.

176.    Moreover, as a result of its breaches and faithless service, V3 has forfeited its rights to retain any commissions that it earned on insurance business that it bound for Plaintiffs in violation of V3's duties as agent, attorney-in-fact and Program Administrator for Plaintiffs. As a consequence, the Court should disgorge all such commissions earned by V3 and direct the payment of same to Plaintiffs.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that the Court enter judgment in favor of Plaintiffs and against V3 which:

(a)    Awards judgment in favor of Plaintiffs and against V3 on all Counts of the Complaint;

(b)    Awards Plaintiffs all damages caused by V3's breaches of the Agreement, which amount shall be in excess of $75,000;

(c)    Requires V3 to indemnify Plaintiffs for all losses, damages, and claims paid and incurred by Plaintiffs arising from all risks that V3 bound in contravention of the Underwriting Guidelines;

- 30 -

(d)     Awards Plaintiffs all damages directly and proximately caused by V3's negligence, negligent supervision, and/or negligent misrepresentations, which amount shall be in excess of $75,000;

(e)     Awards Plaintiffs all damages directly and proximately caused by V3's breach of its fiduciary duties, which amount shall be in excess of $75,000;

(f)     Disgorges all commissions earned by V3 on risks that it placed in breach of its duties as agent, attorney-in fact and Program Administrator for Plaintiffs, which amount shall be in excess of $75,000;

(g)     Awards Plaintiffs pre-judgment interest in accordance with CPLR 5001, *et seq*.

(h)     Awards Plaintiffs all cost and reasonable fees and expenses incurred in pursuing this action;

(i)     Awards Plaintiffs such other and further relief as is just and proper.

Dated: March 16, 2016
New York, New York

**DENTONS US LLP**

By:     /s/ John R. Vales
        John R. Vales
        john.vales@dentons.com

1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700

*Attorneys for Plaintiffs ProSight Specialty Management Company, Inc. and New York Marine and General Insurance Company*

94347730\V-1

- 31 -